# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CHRISTOPHER YOUNG SR,
o/b/o of Montayvious Young, Deceased
and Rena Young

       Plaintiff,

v.

SHERIFF GREGORY TONY, in his
official and individual capacity; LEONARDO
MONTALVO, in his individual capacity;
ERICK ZAMORA, in his individual capacity; MICHAEL
JESSUP, in his individual capacity; WELLPATH
LLC, a foreign limited liability company
Registered and doing business in Florida; WELLPATH
MANGEMENT, INC., a foreign profit corporation
Registered and doing business in Florida; SANDRA
MITCHELL, in her individual capacity; A. HERNANDEZ,
in their individual capacity; JOHN DOES #1-3, in their
individual capacities.

       Defendants.

_____/

CASE NO.: _____

Jury Trial Demanded

## COMPLAINT FOR RELIEF

Plaintiffs Christopher Young, Sr, on behalf of his deceased son, Montayvious Young, and Rena Young by and through the undersigned counsel, hereby sue Broward County, Sheriff Gregory Tony, Wellpath LLC, Wellpath Management Inc., and John Does #1-3 (collectively, "Defendants"), and allege as follows:

### INTRODUCTION

Montayvious Young was just twenty years old when he died in the custody of the Broward Sheriff's Office. He was a young man trying to find his way despite suffering from mental health issues. Montayvious was loved dearly by his blended family including his parents, step-mother, and siblings. In July 2022, Montayvious was in the throws of a mental health crisis. His mother,

Rena Young, had called the Broward Sheriff's Office seeking help emergency mental health services for her son. Much to her surprise, he was taken for screening pursuant to the Florida Baker Act and shortly thereafter released. On January 19, 2022, Montayvious called the police on himself to report that he had removed his ankle monitor and wanted to go to jail. Deputy Leonardo Montalvo responded to Montayvious' call and found a young mean clearly suffering from mental illness. Montayvious was placed under arrest for giving a false name to a law enforcement officer and for tampering with his electronic monitoring device. This arrest placed him in Broward's care, custody, and control.

When the case was scheduled for first appearance on July 20, 2022, the presiding judge ordered a mental health screen of Montayvious. However, within two days of being in the jail's custody, Montayvious was found dead having hanged himself in his jail cell at the Broward County Main Jail. And if the trauma of losing her young son was not enough, Rena Young was put through additional suffering when deputies led by Deputy Erick Zamora of the Broward Sheriff's Office showed up at her house on August 2, 2022 looking to arrest Montayvious, who had died in their custody, for violating the conditions of his pretrial release. She arrived to find them inside her home tearing apart her belongings while searching for her son. Her statements to them that he had died while in the custody at the Broward County Jail fell upon deaf ears. The staff at Broward County's Main Jail failed to provide adequate care for Montayvious. This failure caused Montayvious' mental health to deteriorate which led to his death. Unfortunately, the death of a mentally ill person at the Broward County Jail is not unique. The jail staff have not been properly trained or supervised on how to deal with mental health and the result is often times deadly. Montayvious' family files this suit to demand justice and accountability.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the claims asserted herein pursuant to 28 U.S.C. §§§ 1331, 1343(a)(3), and 1367(a).

2. Venue is proper because the facts giving rise to Plaintiff's claims occurred within the Southern District of Florida. *See* 28 U.S.C. § 1391.

## PARTIES

3. Plaintiff Christopher Young, Sr. is a resident of the State of Florida and resides in Broward County, Florida. Plaintiff is the father of Montayvious Young and has been appointed the legal representative of Montayvious Young's estate.

4. Plaintiff Rena Young, is a resident of the State of Florida and at all times relevant to this claim resided in Broward County, Florida. Plaintiff is the mother of Montayvious Young.

5. Defendant Sheriff Gregory Tony is, and was at all times relevant to this Complaint, the Sheriff of Broward County, Florida. As Sheriff of the Broward Sheriff's Office ("BSO"), Defendant Tony has supervisory responsibility over all employees, staff, and agents, including medical personnel, at all of the Broward County jail facilities, including Main Jail. On information and belief, Defendant Tony exercises control over the operations at the jail facilities, including over BSO's In Custody Behavioral Services Division ("ICBSD") and its mental health and program services, including, but not limited to, infirmary care, mental health infirmary care, crisis care, suicide watch, psychiatric observation, group treatment and programs, and individual treatment

and programs.[1] Defendant Tony is responsible for ensuring that individuals in the Broward County jail facilities are provided with medical and mental health treatment and services and timely medical and hospital attention, especially in the context of medical and mental health emergencies and are adequately supervised and monitored. Defendant Tony is also responsible for establishing and maintain adequate policies and procedures for all Broward Sheriff's Office employees and at all of the Broward County jail facilities, including Main Jail; training, supervising, and disciplining all employees and staff of the Broward Sheriff's Office including all employees, staff, and medical personal at the Broward County jail facilities, including Main Jail. He is sued in his official and individual capacities. Defendant Tony may be served at the Broward Sheriff's Office located at 2601 West Broward Blvd, Fort Lauderdale, FL 33312.

6. Defendant Leonardo Montalvo was at all times relevant to this Complaint working for the Broward Sheriff's Office, as a deputy sheriff, as an employee or agent of BSO, acting within the scope of his employment or agency with BSO and under the color of state law.

7. Defendant Erick Zamora was at all times relevant to this Complaint working for the Broward Sheriff's Office, as a deputy sheriff, as an employee or agent of BSO, acting within the scope of his employment or agency with BSO and under the color of state law.

8. Defendant Michael Jessup was at all times relevant to this Complaint working for the Broward Sheriff's Office, as a deputy sheriff, as an employee or agent of BSO, acting

---

[1] *Carruthers v. Israel*, 76-cv-06086, ECF 1073-1, Mental Health Report – Status of Compliance with Settlement Agreement Terms - Kathryn A Burns MD, MPH (dated May 15, 2023), at 4-5.

within the scope of his employment or agency with BSO and under the color of state law.

9. Defendant Wellpath LLC, formerly known as Correct Care Solutions LLC, is a foreign limited liability company existing under the laws of the State of Delaware and registered to do business in the State of Florida. Defendant Wellpath LLC's principal address is 3340 Perimeter Hill Rd, Nashville, TN 37211, and it may be served upon its Florida Registered Agent at Corporate Creations Network Inc, 801 US Highway 1, North Palm Beach, FL 33408.

10. Defendant Wellpath Management, Inc., formerly known as Correctional Medical Group Companies, Inc., is a foreign profit corporation existing under the laws of the State of Delaware and registered to do business in the State of Florida. Defendant Wellpath Management Inc.'s principal address is 3340 Perimeter Hill Rd, Nashville, TN 37211, and it may be served upon its Florida Registered Agent at Corporate Creations Network Inc, 801 US Highway 1, North Palm Beach, FL 33408.

11. On information and belief, Defendants Wellpath LLC and Wellpath Management Inc. (collectively, "Wellpath Defendants") were at all times relevant to this Complaint sharing money, resources, policies, practices, officers, directors, attorneys, and management, and each organized under the laws of the State of Delaware and licensed to do business in the State of Florida. Wellpath LLC and Wellpath Management Inc. not only share the same Registered Agent (Corporate Creations Network, Inc.) and principal address in Nashville, but the same CEO (Jorge Dominicis), President (Louis Hallman), and Treasurer (David Waltzer).[2]

---

[2] *See* Florida Department of State, Division of Corporations, Wellpath Management, Inc., available at https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=I

12. Defendant Sandra Mitchell was at all times relevant to this complaint an employee or agent of Wellpath Defendants and was acting within the scope or agency of her employment with Wellpath.

13. Defendant A. Hernandez (First Name Unknown) was at all times relevant to this complaint an employee or agent of Wellpath Defendants and was acting within the scope or agency of their employment with Wellpath.

## FACTUAL ALLEGATIONS

### *BSO's Custody of Montayvious Young*

14. Montayvious Young was arrested by the Broward County Sheriff's Office on April 15, 2021. At that time until July 9, 2021, he was housed at the Broward County Jail, including in its mental health areas.

15. Employees of both the Broward County Jail and Wellpath Defendants were aware of Montayvious' mental health diagnosis and struggles.

16. On July 9, 2021, Montayvious Young was placed on Pre-Trial Release with an Electronic Monitor to be supervised by the Broward Sheriff's Office for criminal case # 21003620CF10A pending in Broward County, Florida. A condition of his pre-trial release was that he submit to a psychological evaluation within 30 days of his release.

17. On July 12, 2022, the attorney representing Montayvious Young filed a Motion for Downward Departure alleging that Mr. Young was suffering from Schizoaffective Disorder. He appeared in court on July 14, 2022 and the case was reset.

---

nitial&searchNameOrder=WELLPATHMANAGEMENT%20F180000000491&aggregateId=forp-f18000000049-5b4b1b67-13e2-4a9a-8c44-4e701f1f9ac9&searchTerm=wellpath%20management&listNameOrder=WELLPATHMANAGEMENT%20F18000000049.

18. On or about July 16, 2022, Rena Young, Montayvious' mother, called the Broward Sheriff's Office seeking mental health assistance for her son. Specifically, she was seeking to have him involuntarily committed for psychiatric observation pursuant to the Florida Baker Act.

19. On or about July 16, 2022, Montayvious Young was transported by BSO employees for psychiatric assessment and then released.

20. On July 19, 2022, Deputy Sheriff Leonardo Montalvo and Deputy Sheriff Jessup responded to the 100 Block of E Prospect Road in Oakland Park, Florida in reference to a black male who had ripped off his ankle monitor and wanted to go to jail.

21. Montayvious Young originally gave a fake name, according to Deputy Montalvo. Deputy Montalvo subsequently detained Montayvious who then told them that he had removed his ankle monitor, threw it in a nearby trash can and then proceeded to show them where the ankle monitor had been thrown away. Montayvious expressed that he destroyed the monitor because he wanted to go to jail.

22. On July 19, 2022, Montayvious Young was taken into BSO custody and transported to the Broward Main Jail.

23. BSO maintains several jail facilities including the North Broward Bureau. The North Broward Bureau is a "a minimum to medium-security, special needs detention facility" intended to "house and manage the mentally ill, medically infirm and special needs inmate population."[3] Montayvious was not transported to the North Broward Bureau.

24. Montayvious' deteriorating mental health condition was readily apparent while at the Main Jail.

---

[3] North Broward Bureau, Broward County Sheriff's Office, available at https://www.sheriff.org/DOD/Pages/Facility.aspx?title=North+Broward+Bureau.

25. On July 19, 2022, Montayvious was involved in an altercation with another inmate which led to him being pepper sprayed by BSO. He was then seen by medical staff member John Doe #1 who noticed a human bite mark on Montayvious' jaw. The disposition by medical staff was to place Montayvious in a solitary cell. After taking a COVID-19 test, Montayvious refused any further medical screening.

26. On July 20, 2022, at 6:56am, LPN Sandra Mitchell did a Pre-Segregation Health Evaluation which found no concerns in Montayvious.

27. By the time he appeared before the first appearance judge on July 20, 2022, his deteriorating mental health condition was so apparent that the judge ordered a mental health screen.

28. Records do not reflect that the mental health screen of Montayvious was ever done.

29. Also on July 20, 2022, the first appearance judge revoked Montayvious' pre-trial release in Broward County Case# 21003620CF10A and held him without bond.

30. Also on July 20, 2022, Pre-Trial Services Officer Candia Williams submitted an affidavit of violation of pre-trial release to Judge Marina Garcia Wood. On July 21, 2022 Judge Garcia Wood signed the warrant.

31. On July 22, 2022, that warrant was filed with the Clerk of Court.

32. Following his court appearance on July 20, 2022, Montayvious was held in a solitary cell (segregation).

33. It seems that from the time he was placed in the segregation unit in the early morning hours of July 20, 2022, until he was found deceased at 14:38 on July 21, 2022, the nurses made just two rounds to check on Montayvious' condition while in segregation. These rounds were made by John Doe #2 and John Doe #3.

34. At approximately 12:45pm on July 21, 2022, EMT A. Hernandez attempted to administer an intake screening on Montayvious, but Montayvious would not respond. EMT A. Hernandez indicated that a report would be given to the oncoming nurse.

35. Nothing further was done to assess Montayvious' condition and within two hours he was found unresponsive in his cell with a bed sheet tied around his neck. Upon arrival of Fort Lauderdale Fire Resume, Montayvious was pronounced dead.

36. The Broward County Medical Examiner's Office determined the cause and manner of death to be suicide by asphyxia due to ligature strangulation.

37. On August 2, 2022, Rena Young, Montayvious' mother, came home to find BSO deputies inside her home without her consent. They advised that they were looking to arrest Montayvious on the warrant for violating his pre-trial release.

38. They did not listen to her when she told them that Montayvious had passed away in the Broward County Jail days earlier. The deputies, including BSO Deputy Erick Zamora, tore apart her house looking for her son.

### *BSO, Wellpath, and Supervisory Defendant Tony's Policy and Practice of Inadequate Mental Health Treatment*

39. Individuals being held pre-trial in jail are entitled to reasonable medical and mental health care, including mental health assessments, qualified staff to monitor mental health conditions, medication and specific procedures when medication is "refused," access to mental health programming, and transfer to facilities better equipped to handle mental health needs.[4]

---

[4] *See* Estelle v. Gamble, 429 U.S. 97, 103 (1976).

40. The Broward Sheriff's Office has stated that it "understands mental health concerns are public safety concerns. Responding to crises demands innovation, and BSO is leading the way with pioneering programs to address mental health issues that affect our community."[5]

41. Broward County Jail has a decades-long history of failing to provide adequate mental health treatment.

42. The jail has been subject to oversight since the 1970s and remains under a consent decree, last updated in August 2018, that requires it to meet various mental health standards related to intake screening assessments, access to care, referrals, periodic assessments, medications, and discipline, segregation, and use of force, among other areas.

43. BSO entered into a contract with Wellpath in 2018 despite the company's long, public history of abuse and neglect.[6]

44. Despite court-ordered improvements and monitoring, Broward County Jail has consistently failed to provide access to adequate mental health care or appropriate and life-saving treatment to individuals with mental illness. For instance, BSO regularly fails to provide: (1) alternative treatment plans for individuals who refuse medication; and (3) psychiatric contacts based on symptoms or clinical need.

45. BSO has also repeatedly failed to hospitalize individuals whose mental health conditions cannot be managed in the jail and made housing decisions without a

---

[5] *Revolutionizing Mental Health Support*, BROWARD SHERIFF'S OFFICE, https://www.sheriff.org/mentalhealth/Pages/default.aspx (last visited October 22, 2024).
[6] Dan Christensen, *New Broward Jail Healthcare Provider Has Grim History of Lawsuits, Death*, FLORIDA BULLDOG, (June 25, 2018) https://www.floridabulldog.org/2018/06/new-broward-jail-healthcare-provider-has-grim-history-of-lawsuits-deaths/

psychiatrist properly evaluating whether a particular assignment or means of confinement will exacerbate an individual's condition.[7]

46. BSO has repeatedly allowed individuals with mental health conditions to decompensate at the jail instead of transferring them to another facility that could provide a higher level of mental healthcare.

47. On information and belief, an inmate identified as "LB" was accepted into the jail after intake screening instead of being sent to a psychiatric hospital despite acting "bizarre" and "agitated." [8] He later deteriorated and regressed to the point where he could not meaningfully communicate.[9]

48. On information and belief, an inmate identified as "JV" entered North Broward Bureau with diagnoses of "malingering, adjustment disorder with mixed anxiety and depressed mood."[10] While he was being booked, he was found trying to hang himself.[11] He was placed on suicide watch and admitted to the infirmary at the Main Jail and was later transferred back to North Broward Bureau on suicide watch.[12] He returned to Main Jail approximately one year later and committed suicide by hanging.[13]

49. BSO has repeatedly failed to provide individuals with mental health conditions their prescribed medication.

50. On information and belied, in February 2023, Wellpath staff failed to order medication for an individual identified as "AB" even though an "emergent referral" was

---

[7] Livingston, *Second pregnant woman almost gave birth in Broward jail cell*, LOCAL 10 (May 21, 2019), available at https://www.local10.com/news/2019/05/21/second-pregnant-woman-almost-gave-birth-in-broward-jail-cell/.

[8] Initial Report of Joint Mental Health Expert, *supra* note 8, at 32.

[9] *Id.*

[10] *Id*. at 51.

[11] *Id.*

[12] *Id.*

[13] *Id.*

documented during his mental health screening, and he had been prescribed antipsychotic and antidepressant medications during his prior stay at the jail in 2022.[14]

51. On information and belief, in January 2013, an individual identified as "SS" had schizophrenia but did not receive his medication despite medical staff having access to his medication.[15]

52. On information and belief, an individual identified as "SR 2" had been treated in a psychiatric hospital before his arrival at the jail and had a recent history of self-harm, yet his medication was discontinued without explanation once he arrived at the jail. [16]

53. On information and belief, an individual identified as "DB" had been hospitalized before and during his time in custody at the jail but the medication he had been prescribed at the hospital was not ordered when he returned to the jail and no explanation was provided.[17]

54. On information and belief, Wellpath's "Basic Mental Health Services" policy does not provide for individuals taking psychotropic medication to see a psychiatrist regularly.

55. On information and belief, Wellpath's "Psychiatric Services" policy does not have clear directives or instructions for staff on how to handle inmate refusal to take prescribed psychotropic medication.

56. BSO has repeatedly failed to address deficiencies in mental health assessments, including incomplete forms and sparse clinician narratives, leading to inaccurate assessments and reporting.

---

[14] Mental Health Report – Status of Compliance with Settlement Agreement Terms, *supra* note 1 at 4-5.
[15] *Carruthers v. Israel*, 76-cv-06086, ECF 1043-2, Appendix: Inmate Record Reviews/Summaries/Interviews – Kathryn A Burns MD, MPH (dated August 8, 2018), at 29.
[16] *Carruthers v. Israel*, 76-cv-06086, ECF 1064-1, Mental Health Report – Jail Baseline Conditions - Kathryn A Burns MD, MPH (dated November 20, 2020), at 11.
[17] *Id.*

57. On information and belief, in June 2022, Wellpath did not assess an individual identified as "MN" who was laying in his cell in the fetal position and not responding.[18] For several weeks, he "deteriorated physically and mentally."[19] Despite his condition, a registered nurse noted that he was "alert and oriented x4" and his "speech [was] spontaneous and relevant"–an impossibility considering his "regressed condition."[20]

58. On information and belief, in December 2019, an individual identified as "RW" was observed to be "grossly psychotic" and identified as "having a serious mental illness," yet just a few days later, an assessment by a Wellpath nurse checked every box as "normal"–an impossibility considering his mental health condition.[21]

59. On information and belief, in January 2020, an individual identified as "JH" was noted by Wellpath staff to be non-verbal and, at the same time, have "slurred speech; irritable mood; labile affect; coherent thought form; appropriate thought content; oriented to person, place, time and situation; intact memory; good insight and good judgment"–an impossibility if he was not speaking to the medical staff.[22]

60. BSO's persistent failures to treat mental illness have resulted in individuals incarcerated at BSO engaging in self-harm and other injuries. For instance, in September 2018, an individual self-mutilated after refusing his medication and food.[23]

---

[18] Mental Health Report – Status of Compliance with Settlement Agreement Terms, *supra* note 1 at 34.
[19] *Id.*
[20] *Id.*
[21] Mental Health Report – Jail Baseline Conditions, *supra* note 16 at 26–27.
[22] *Id.* at 32.
[23] Eric Balaban and Stephanie Wylie, *A Mentally Ill Man in Solitary Cut Off a Body Part at the Broward County Jail*, ACLU (Mar. 28, 2019), available at https://www.aclu.org/blog/prisoners-rights/medical-and-mental-health-care/mentally-ill-man-solitary-cut-body-part-broward.

61. In April 2019, Wellpath staff at the jail ignored a mentally ill pregnant woman who went into labor for almost seven hours, forcing her to deliver her baby alone in her cell without any medical assistance or medication.[24]

62. On information and belief, in November 2021, an individual identified as "EF" was found hanging and unresponsive in the jail and died in the hospital days later.[25] Despite reporting during a mental health assessment that he was bipolar and needed his medication, had made a suicide attempt in the past, and had been psychiatrically hospitalized on three occasions, EF's psychiatric assessment was delayed and he did not see a psychiatrist or start taking medication for almost two weeks.[26]

63. On information and belief, after Wellpath staff discontinued SR 2's prescribed medication, he told a nurse that he heard voices telling him to "harm society" and asked to be put back on his prescribed medication.[27] He was told it was "non-formulary" and he was not referred to a psychiatrist to discuss it.[28] Two months later, he attempted hanging at the jail and died in the hospital.[29]

64. BSO has failed to provide individuals suffering from mental illness with the mental health treatment and care they need to come clinically stable enough to receive out-of-

---

[24] Blake Ellis and Melanie Hicken, *Dangerous jail births, miscarriages, and stillborn babies blamed on the same billion dollar company*, CNN (May 7, 2019), available at https://www.cnn.com/2019/05/07/health/jail-births-wellpath-ccs-invs/index.html; Deanna Paul, *A pregnant inmate came to term in jail. Lawyers say she was forced to give birth there — alone.*, The Washington Post (May 6, 2019), available at https://www.washingtonpost.com/nation/2019/05/04/mentally-ill-woman-gives-birth-alone-broward-county-jail-attorney-says/.

[25] Mental Health Report – Status of Compliance with Settlement Agreement Terms, *supra* note 1 at 12.

[26] *Id.*

[27] Mental Health Report – Jail Baseline Conditions, *supra* note 16 at 22.

[28] *Id.*

[29] *Id.*

cell time and engage in social interactions and cell front interactions, depriving them of jail conditions accessed by other inmates.[30]

65. On information and belief, in December 2019, an individual identified as "JI" refused medication and remained in psych observation where he was "housed alone" and did not have the "opportunity to interact or participate in out-of-cell treatment," leading him to" become[] grossly psychotic again."[31]

66. On February 6, 2011, at 10:00 A.M. a mentally ill inmate, William Campbell, became hypotensive after being in the Broward County Jail for one day. [32] The medical provider at the time was made aware of this serious medical condition and failed to have Mr. Campbell transported to the hospital when hospitalization was necessary. Campbell was not transported to the hospital until February 7, 2011, where he later died.[33]

67. The Mortality or Morbidity Review relating to William Campbell was reviewed at a meeting on February 31, 2011, that was attended by the then medical provider's regional vice president, Health Services Administrator, medical director and director of nursing as well as eight other high-ranking employees. Therefore, the medical provider and BSO through their policymakers were aware of the problems outlined above in the care of Mr. Campbell including that the decision to transfer him to an outside hospital was delayed at least 24 hours. However, the medical provider and BSO failed to take any corrective action to prevent future deaths.[34]

---

[30] Mental Health Report – Jail Baseline Conditions, *supra* note 16 at 30.
[31] *Id.* at 38–39.
[32] *Obremski v. Armor*, 18-cv-61798, ECF 1.
[33] *Id.*
[34] *Id.*

68. Several other inmates suffered fates similar to William Campbell's:

    a. October 10, 2011, Gary Joseph Smith, a mentally ill man was transferred to the Broward County Jail Infirmary instead of the hospital where he became dehydrated and suffered from acute renal failure with metabolic encephalopathy. Mr. Smith died in the hospital.[35]

    b. Raleigh Priester, who battled with severe mental health problems, including schizophrenia, was placed in Broward County's solitary confinement for months, in 2012, where he was eventually found dead and weighing 120 pounds less than when he first came into the jail. BSO and the medical provider failed to properly treat Mr. Priester.[36]

    c. William Herring Jr., a mentally ill inmate in Broward County Jail told the medical providers that he was fasting and would not eat, drink or take medication because that is what God asked of him. Then Broward Circuit Court Judge Singhal entered an order directing the medical provider and BSO to immediately have Mr. Herring seen by the psychiatric staff. The order was ignored by BSO and the medical provider. The medical provider ignored Mr. Herring's need for medical attention. On November 16, 2012, Mr. Herring collapsed and was taken to Broward General Medical Center where he was found to be severely dehydrated and was exhibiting almost no brain activity. His family took him off life support and he died.[37]

---

[35] *Id.*
[36] *Id.*
[37] *Id.*

d. Simon Valacheryil, a mentally ill inmate in the North Broward Bureau infirmary was weak, frail, and unable to get out of bed. His blood tests showed that he was critically dehydrated and suffering from an acute and severe infection. The medical provider failed to have Mr. Valacheryil transferred to an outside hospital for care despite knowledge that Mr. Valacheryil needed hospitalization. By the time that Mr. Valacheryil was transferred to the hospital there was nothing hospital staff could do, and he died at 5:52AM on January 7, 2015.[38]

69. Defendant Tony is aware of BSO and Wellpath's deficient policies. On information and belief, Defendant Tony has failed to implement changes to policies or training despite multiple incidents of deliberate indifference to medical needs.

70. On information and belief, BSO and Defendant Tony extended Wellpath's contract in or around 2021 despite the company's poor record of performance.[39]

### *BSO's Deficient Training, Supervision, and Discipline on Responding to Mental Health and Medical Emergencies*

71. BSO has inadequately trained its deputies, including the individual defendants, on the appropriate medical responses to mental health and medical emergencies in mental health areas of the jail.

72. On information and belief, BSO has not implemented new or additional training in response to the numerous deaths that have resulted from inadequate supervision and treatment of individuals with mental illness housed in the Broward County Jail facilities. [40]

---

[38] *Id.*
[39] Christensen, *supra* note 6.
[40] Christensen, *supra* note 6.

73. On information and belief, BSO has failed to train a sufficient number of mental health staff to provide mental health treatment services including counseling and psychosocial programming.[41]

74. On information and belief, BSO failed to discipline its staff, including the individual Defendants, for failing to provide or seek emergency medical or mental health treatment in a timely manner.

### *Wellpath's Deficient Training, Supervision, and Discipline on Mental Health Treatment and Responding to Mental Health and Medical Emergencies*

75. Wellpath staff failed to provide Montayvious with the mental health treatment that he required.

76. On information and belief, Wellpath has inadequately trained its staff, including the individual Defendants, on providing treatment and services to individuals with mental health conditions.

77. On information and belief, Wellpath failed to provide adequate training on how to follow treatment plans for individuals with mental illness, including individuals who "refuse" to take their medication or eat.

78. In information and belief, Wellpath failed to provide adequate training to the staff, including the individual defendants, on (1) treating Montayvious' mental health conditions, (2) getting him the required care, and (3) conducting a mental health screening and evaluation.

79. CNN's 2019 investigation into Wellpath revealed that the company repeatedly relied on inexperienced workers and provided minimal training.[42]

---

[41] Initial Report of Joint Mental Health Expert, *supra* note 8, at 65.
[42] Blake Ellis and Melanie Hicken, *Please Help Me Before It's Too Late*, CNN (June 25, 2019) https://www.cnn.com/interactive/2019/06/us/jail-health-care-ccs-invs/.

80. On information and belief, Wellpath failed to discipline its staff, including the individual defendants, for failing to provide or seek emergency medical or mental health treatment in a timely manner.

### BSO, Wellpath, and Supervisory Defendant Tony's Policy and Practice of Inadequate Medical Treatment

81. Wellpath and Broward County Jail have a history of failing to provide adequate medical treatment, including emergency medical treatment.

82. In 2018, Broward County Jail contracted with Wellpath (then called "Correct Care") to provide services to detainees. Before the contract was finalized, concerns were raised about Wellpath, including accusations of needless death and inadequate care.[43] At the time, there were no less than 24 federal lawsuits related to inmate deaths and 145 federal lawsuits related to negligent care.[44]

83. CNN's 2019 investigation into Wellpath revealed the company failed to get incarcerated individuals emergency care and provided substandard care that led to avoidable deaths and other serious outcomes.[45]

84. On information and belief, Wellpath's "Emergency Services" policy does not clearly instruct, direct, or require staff to provide prompt treatment or resuscitative measures to an individual in emergency situations.

85. On information and belief, Wellpath's "Emergency Services" policy does not provide a chain of command for emergency response situations and does not make clear

---

[43] Christensen, *supra* note 6.

[44] *Id.*

[45] Blake Ellis and Melanie Hicken, *Please Help Me Before It's Too Late*, CNN (June 25, 2019), available at https://www.cnn.com/interactive/2019/06/us/jail-health-care-ccs-invs/.

whether health services staff need permission from correctional staff to evaluate an individual who may need emergency treatment.

86. On information and belief, Wellpath's "Emergency Services" policy does not permit health services staff to independently determine whether an individual requires emergency services.

87. BSO and Wellpath have a history of ignoring serious medical needs and delaying the provision of treatment.

88. On information and belief, before "RS" was removed from his cell and placed in a restraint chair, where he died shortly thereafter, an earlier order for emergency medication was ignored by BSO staff and a deputy refused to open the cell door to allow medical staff to administer the medication.[46]

89. In 2019, a pregnant woman going into labor was ignored by BSO staff and accused of lying. Despite complaining about pain for a week, she was only taken to the hospital after she showed staff she was bleeding and her water broke.[47]

90. On information and belief, in June 2022, an individual identified as "KL" died after Wellpath medical staff failed to examine him despite Wellpath mental health staff informing them that KL had become non-verbal and had difficulty moving.[48] KL had been psychiatrically hospitalized and diagnosed with schizophrenia but was not receiving his prescribed medication after he returned to the jail.[49]

---

[46] Mental Health Report – Jail Baseline Conditions, *supra* note 16 at 11, 38.
[47] Livingston, *supra* note 7.
[48] Mental Health Report – Status of Compliance with Settlement Agreement Terms, *supra* note 1 at 4–5.
[49] *Id.*

91. On information and belief, in January 2024, Alvin Modeste committed suicide by asphyxiation at the Broward County Jail. [50] Despite Mr. Modeste being held in the Mental Health wing of the jail, BSO and Wellpath failed to respond to his medical and mental health needs and adequately supervise him.[51]

## CAUSES OF ACTION

### COUNT 1
### 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT – Deliberate Indifference to Serious Medical Needs
### (Defendants Leonardo Montalvo and Michael Jessup)

92. Plaintiff repeats and realleges every allegation of the Complaint.

93. Deputy Sheriff Leonardo Montalvo and Deputy Sheriff Michael Jessup were aware of Montayvious' series and persistent mental illness, as evidenced by the fact that he told them he took off his ankle monitor because he wanted to go to jail.

94. Regardless of this obvious sign of mental health deterioration, Montayvious was taken into custody and transported to Broward Main Jail instead of North Broward Bureau.

95. Defendants were aware and had actual knowledge of Montavious's mental health needs, which presented a substantial risk of harm, yet they failed to take the required steps necessary to get Montayvious to the appropriate place for him to treat his mental health crisis and prevent Montayvious from harming himself.

96. Defendants drew the inference that a risk of serious harm existed if Montayvious was not treated.

97. Defendants disregarded the risk of harm and their conduct amounted to more than gross negligence.

---

[50] Ternell Forney, *Inmate deaths in Broward County lead to distraught families demanding answers*, LOCAL 10 (January 5, 2025) https://www.local10.com/news/local/2024/01/05/inmate-deaths-in-broward-county-lead-to-distraught-families-demanding-answers/.
[51] *Id.*

98. Defendants' deliberate indifference to a known and substantial risk of harm to Montayvious Young violated the Fourteenth Amendment.

99. Defendants' violation of the Fourteenth Amendment was the cause of Montayvious Young's injuries, pain and suffering, and death.

100. Plaintiff prays that after due proceedings there be judgment rendered herein in Plaintiff's favor and against Leonardo Montalvo and Micheal Jessup as follows:

    a. Compensatory damages;

    b. Reasonable attorneys' fees, as provided in 42 U.S.C. § 1988, and all costs of these proceedings;

    c. Punitive damages pursuant to 42 U.S.C. § 1983 and any other applicable statute; and

    d. All other relief as appears just and proper to this Honorable Court.

**COUNT 2**
**42 U.S.C. § 1983 – FOURTEENTH AMENDMENT – Deliberate Indifference to Serious Medical Needs**
**(Defendants Sandra Mitchell, A. Hernandez, and John Does #1-3)**

101. Plaintiff repeats and realleges every allegation of the Complaint.

102. At all times while he was being held in the Main Jail, Montayvious was suffering from a serious and persistent mental illness that required substantial attention, observation, medication, and treatment in order from him to remain competent, stable, and capable for caring for himself, and to prevent him from committing self-harm.

103. Defendants Sandra Mitchell, A. Hernandez, and John Does #1-3 were aware of Montayvious' serious and persistent mental illness.

104. Defendants were aware and had actual knowledge of Montavious's mental health needs, which presented a substantial risk of harm, yet they failed to take the required steps necessary to properly treat Montayvious, follow-up on Montayvious' condition and supervise Montayvious while he was in segregation.

105. An inmate who is suffering from mental health issues who is unresponsive presents an obvious substantial risk of harm, especially if placed in a solitary or segregation unit.

106. Defendants' observations of Montayvious' obvious, serious mental health deterioration constitutes actual knowledge of a risk of serious harm.

107. Defendants drew the inference that a risk of serious harm existed if Montayvious was not properly treated.

108. Defendants disregarded the risk of harm and their conduct amounted to more than gross negligence.

109. Defendants' deliberate indifference to a known and substantial risk of harm to Montayvious Young violated the Fourteenth Amendment.

110. Plaintiff prays that after due proceedings there be judgment rendered herein in Plaintiff's favor and against Sandra Mitchell, A. Hernandez, and John Does #1-3 as follows:

   a. Compensatory damages;

   b. Reasonable attorneys' fees, as provided in 42 U.S.C. § 1988, and all costs of these proceedings;

   c. Punitive damages pursuant to 42 U.S.C. § 1983 and any other applicable statute; and

   d. All other relief as appears just and proper to this Honorable Court.

**COUNT 3**
**42 U.S.C. § 1983 – FOURTEENTH AMENDMENT – Deliberate Indifference to Serious Medical Needs**
**(Defendants Gregory Tony, Wellpath LLC, and Wellpath Management Inc.)**

111.    Plaintiff repeats and realleges every allegation of the Complaint.

112.    At all times while he was being held in the Main Jail, Montayvious was suffering from a serious and persistent mental illness that required substantial attention, observation, medication, and treatment in order from him to remain competent, stable, and capable for caring for himself, and to prevent him from committing self-harm.

113.    The violations of Montayvious' constitutional rights alleged in the above counts were committed by the individual defendants while they were acting on behalf of their respective employers, pursuant to the customs, practices, policies, and/or procedures of their respective employers.

114.    Defendant Tony had the duty and responsibility to oversee the operation of the Broward County Sheriff's Office and its jail facilities to set its customs, practices, policies, and procedures, and to ensure that the constitutional rights of the inmates incarcerated at that facility were not violated.

115.    Wellpath Defendants were responsible for the administration, supervision, and delivery of health and medical services, including mental health, at the Broward County jail facilities.

116.    It was the custom, practice, policy or procedure of Defendant Tony and the Wellpath Defendants to incarcerate individuals with serious and persistent mental health illnesses in the Broward County jail facilities without providing the adequate

personnel, facilities, resources, knowledge, training, experience, or expertise to care for these individuals.

117. Defendant Tony and the Wellpath Defendants knew that the personnel, facilities, resources, knowledge, training, experience, and expertise available in the Broward County jail facilities was inadequate to sufficiently care for the serious and persistent mental illnesses of inmates incarcerated there, and they knew that the likely consequence of these inadequacies was that the inmates' mental illnesses would worsen and that their stability and competence would deteriorate.

118. Defendant Tony and the Wellpath Defendants knew that it was likely that mentally ill inmates would attempt to harm themselves or others as a result of the lack of care and their subsequent deterioration, yet they failed to provide the care required to prevent these individuals from decompensating.

119. The inmates housed in the Broward County jail facilities have a clearly established constitutional right to receive adequate care for their serious and persistent mental health illnesses.

120. Defendant Tony and the Wellpath Defendants failed to address this serious risk of harm or take adequate measures to cure deficiencies in its administration of emergency medical and mental healthcare.

121. The inmates housed in the Broward County jail facilities have a clearly established constitutional right to receive immediate medical care for their serious medical needs.

122. Accordingly, Defendant Tony and Wellpath Defendants are liable under the Fourteenth Amendment for the individual defendants' deliberate indifference to

Montayvious' serious medical needs which resulted in Montayvious' conscious pain and suffering and later death.

123. Plaintiff prays that after due proceedings there be judgment rendered herein in Plaintiff's favor and against Defendant Tony and Wellpath Defendants as follows:

   a. Compensatory damages;

   b. Equitable relief that BSO and Wellpath be required to adopt policies to prevent further incidents such as those complained of herein;

   c. Reasonable attorneys' fees, as provided in 42 U.S.C. § 1988, and all costs of these proceedings; and

   d. All other relief as appears just and proper to this Honorable Court

**COUNT 4**
**42 U.S.C. § 1983 – FOURTEENTH AMENDMENT – Failure to Train**
**(Defendants Gregory Tony, Wellpath LLC, and Wellpath Management Inc.)**

124. Plaintiff repeats and realleges every allegation of the Complaint.

125. The violations of Montayvious' constitutional rights alleged above were committed by the individual Defendants while they were acting on behalf of their respective employers, pursuant to the customs, practices, policies, and/or procedures of their respective employers.

126. Defendant Tony has a responsibility to ensure that the employees, staff, and agents working for the Broward County Sheriff's Office and in the Broward County's jail facilities are qualified, credentialed, and adequately trained.

127. Defendant Tony failed to train BSO employees, staff, and agents on how to respond to an individual having a mental health crisis and failed to ensure that they

have the requisite knowledge, expertise, and experience to treat an individual who is having a mental health crisis.

128. Defendant Tony failed to train BSO employees, staff, and agents on how to render emergency aid in a timely manner after an individual becomes unresponsive and failed to ensure that they have the requisite knowledge, expertise, and experience to treat an individual who needs emergency medical attention.

129. Defendant Tony failed to train BSO employees, staff, and agents on how adequately monitor an individual placed in a solitary or segregation unit to ensure they have the requisite knowledge, expertise, and experience to ensure the safety of that individual.

130. Wellpath Defendants have a responsibility to train medical personnel in the Broward County jail facilities.

131. Wellpath Defendants failed to train Wellpath employees, staff, and agents, including the individual defendants, on the provision of adequate mental health care, including, but not limited to, the provision of medication, response to an inmate refusing screening and communication, and response to an inmate exhibiting signs of declining mental health.

132. Wellpath Defendants failed to train Wellpath employees, staff, and agents on adequately monitor an individual placed in a solitary or segregation unit to ensure they have the requisite knowledge, expertise, and experience to ensure the safety of that individual.

133. Wellpath Defendants failed to train Wellpath employees, staff, and agents on how to render emergency aid in a timely manner after an individual becomes unresponsive

and failed to ensure that they have the requisite knowledge, expertise, and experience to treat an individual who needs emergency medical attention.

134. Accordingly, Defendant Tony and Wellpath Defendants are liable under the Fourteenth Amendment for their failure to train the individual defendants, resulting in Montayvious' conscious pain and suffering and later death.

135. Plaintiff prays that after due proceedings there be judgment rendered herein in Plaintiff's favor and against Defendant Tony and Wellpath Defendants as follows:

    a. Compensatory damages;

    b. Equitable relief that BSO and Wellpath be required to adopt policies to prevent further incidents such as those complained of herein.

    c. Reasonable attorneys' fees, as provided in 42 U.S.C. § 1988, and all costs of these proceedings; and

    d. All other relief as appears just and proper to this Honorable Court.

**COUNT 5**
**42 U.S.C. § 1983 – FOURTEENTH AMENDMENT – Failure to Supervise and Discipline**
**(Defendants Gregory Tony, Wellpath LLC, and Wellpath Management Inc.)**

136. Plaintiff repeats and realleges every allegation of the Complaint.

137. The violations of Montayvious' constitutional rights alleged above were committed by the individual defendants while they were acting on behalf of their respective employers, pursuant to the customs, practices, policies, and/or procedures of their respective employers.

138. Defendant Tony has a duty to supervise his employees, staff, and agents to ensure that the rights of individuals being arrested and subsequently held in Broward County's jail facilities are protected.

139.     Defendant Tony has a further responsibility to ensure that the employees, staff, and agents working in Broward County's jail facilities are disciplined when they violate the rights of individuals and fail to comply with practices, policies, and procedures.

140.     Defendant Tony failed to supervise BSO employees, staff, and agents responding to individuals having a mental health crisis and rendering emergency aid.

141.     Defendant Tony failed to supervise BSO employees, staff, and agents monitoring individuals placed in solitary or segregation units.

142.     Defendant Tony inadequately investigated and failed to discipline the individual employees, staff, and agents involved following Montayvious' death.

143.     Defendant Gregory Tony ignored or inadequately investigated prior constitutional violations involving the treatment of individuals with mental health conditions, individuals experiencing medical emergencies, and individuals placed in solitary or segregation units, and failed to impose any discipline or adequate discipline on BSO employees, staff, and agents.

144.     Wellpath Defendants have a responsibility to supervise medical personnel in the Broward County jail facilities.

145.     Wellpath Defendants failed to supervise Wellpath employees, staff, and agents providing mental health care, including, but not limited to, administering medication, responding to inmates refusing screening and communication, and responding to inmates exhibiting signs of declining mental health.

146.     Wellpath Defendants failed to supervise Wellpath employees, staff, and agents providing supervision and care to individuals placed in solitary or segregation units.

147. Wellpath Defendants ignored or inadequately investigated prior constitutional violations involving the treatment of individuals with mental health conditions and individuals experiencing medical emergencies, and failed to impose discipline on Wellpath employees, staff, and agents after incidents.

148. Accordingly, Defendant Tony, and Wellpath Defendants are liable under the Fourteenth Amendment for their failure to supervise and discipline the individual defendants and others involved employees, staff, and agents resulting in Montayvious' conscious pain and suffering and later death.

149. Plaintiff prays that after due proceedings there be judgment rendered herein in Plaintiff's favor and against Defendant Tony and Wellpath Defendants as follows:

    a. Compensatory damages;

    b. Equitable relief that BSO and Wellpath be required to adopt policies to prevent further incidents such as those complained of herein;

    c. Reasonable attorneys' fees, as provided in 42 U.S.C. § 1988, and all costs of these proceedings; and

    d. All other relief as appears just and proper to this Honorable Court

**COUNT 6**
**42 U.S.C. § 1983 – FOURTEENTH AMENDMENT – Supervisor Liability**
**(Defendant Gregory Tony)**

150. Plaintiff repeats and realleges every allegation of the Complaint.

151. Defendant Tony, as Sheriff of Broward County, was responsible for supervising all employees of the Broward Sheriff's Office.

152. At the time of Montayvious' death, BSO's history of incidents involving the death or serious injury of mentally ill inmates placed Defendant Tony on notice of the

urgent need to correct BSO's training, policies, and customs on the care and supervision of mentally ill individuals in custody at the Broward County Jail. Despite this notice, Defendant Tony failed to take corrective action to prevent future excessive force incidents.

153. His conduct was in whole or in part the moving force behind the Fourteenth Amendment violations that Montayvious suffered at the hands of BSO staff.

154. Defendant Tony was also responsible for supervising all Wellpath staff, including Defendants Sandra Mitchell, A. Hernandez, and John Does #1-3.

155. Wellpath's extensive history of providing inadequate mental health and medical care, leading to avoidable deaths and other serious injuries at Broward County Jail and other facilities, put Defendant Tony on notice of the need for corrective action. Despite this notice, Defendant Tony failed to take steps to correct Wellpath's constitutionally deficient healthcare provision.

156. Accordingly, Defendant Tony is liable for the violations of Montayvious' Fourteenth Amendment rights committed by BSO and Wellpath staff under his supervision.

157. Plaintiff prays that after due proceedings there be judgment rendered herein in Plaintiff's favor and against Defendant Tony as follows:

   a. Compensatory damages;

   b. Equitable relief that BSO and Wellpath be required to adopt policies to prevent further incidents such as those complained of herein;

   c. Reasonable attorneys' fees, as provided in 42 U.S.C. § 1988, and all costs of these proceedings; and

d.  All other relief as appears just and proper to this Honorable Court.

**COUNT 7**
**42 U.S.C. § 12101, *et seq.* – THE AMERICANS WITH DISABILITIES ACT (ADA)**
**(Defendant Gregory Tony)**

158.  Plaintiff repeats and realleges every allegation of the Complaint.

159.  BSO is a public entity that receives federal funding and is thus required to comply with the ADA, which protects individuals with disabilities. The ADA prohibits public entities from discriminating against individuals with disabilities in their services, programs, and activities.

160.  The ADA defines "a qualified individual with a disability" as a person who suffers from a "physical or mental impairment that substantially limits one or more major life activities" including, but not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(1)(A), (2)(A).

161.  Montayvious' schizoaffective disorder diagnosis made him a "qualified individual with a disability" under the ADA. § 12102(1)(A), (2)(A).

162.  Under the ADA, BSO is required to provide the inmates with disabilities housed in its facilities with reasonable accommodations and modifications so that they can avail themselves of, and participate in, all of the programs and activities offered in the Broward County jail facilities.

163.  The majority of individuals suffering with mental illness in the jail are unable to participate in mental health programming like daily treatment programs and group treatment, or to receive enough out-of-cell time and recreation time and engage in

social interactions and cell front interactions, depriving them of programs and conditions accessed by other inmates

164. BSO (1) failed to ensure that Montayvious was provided with mental health assessments after July 19, 2022 in line with monitoring and treating his mental illness; (2) failed to ensure that Montayvious received medication in line with treating his mental illness; (3) failed to provide access to safe, appropriate housing that would reduce Montayvious' ability to self-harm; (4) failed to provide adequately trained staff to address Montayvious' mental health needs; (5) failed to provide Montayvious with out-of- cell programming due to this mental health status that they failed to treat; and (6) failed to transfer Montayvious to another facility better equipped to handle his needs.

165. Had BSO ensured that Montayvious received adequate mental health treatment and was housed in a proper setting, or, alternatively, that Montayvious was transferred to a facility that could provide adequate mental health treatment, Montayvious' mental health would not have further deteriorated.

166. As a direct result of BSO's failure to reasonably accommodate Montayvious by providing adequate mental health treatment and services as required by the ADA, he experienced pain and suffering and later death.

167. Accordingly, BSO is liable under the ADA for its failure to provide adequate mental health treatment and services, mental health programming, proper accommodations, safe housing, adequate supervision, and adequately trained staff.

168. Plaintiff prays that after due proceedings there be judgment rendered herein in Plaintiff's favor and against Defendant Tony as follows:

a. Compensatory damages pursuant to 42 U.S.C. § 12101, et seq. and any other applicable statute;

b. Equitable relief that BSO and Wellpath be required to adopt policies to prevent further incidents such as those complained of herein;

c. Reasonable attorneys' fees, as provided in 42 U.S.C. § 12205, and all costs of these proceedings; and

d. All other relief as appears just and proper to this Honorable Court.

**COUNT 8**
**SECTION 504 OF THE REHABILITATION ACT (RA)**
**(Defendant Gregory Tony)**

169. Plaintiff repeats and realleges every allegation of the Complaint.

170. BSO is a public entity that receives federal funding and is thus required to comply with Section 504 of the RA, which prohibits discrimination against persons with disabilities by any program or activity receiving federal financial assistance. 29 U.S.C. § 794(a), (b)(1).

171. Montayvious' schizoaffective disorder diagnosis made him a qualified individual with a disability under the RA. 29 U.S.C. § 705(20), (21).

172. BSO (1) excluded Montayvious from participation in, and denied him the benefits of, programs or activities solely by reason of his disability (schizoaffective disorder); (2) subjected him to discrimination; and (3) denied him the opportunity accorded to others to participate in programs and activities. 29 U.S.C. § 794(a).

173. BSO utilized criteria or methods of administration that either purposefully or in effect discriminate on the basis of mental illness, and defeat or substantially impair

accomplishment of the objectives of Broward County jail facilities' programs or activities with respect to individuals with mental illness. 28 C.F.R. § 42.503(b)(3).

174. The majority of individuals suffering with mental illness in the jail are unable to participate in mental health programming like daily treatment programs and group treatment, or receive enough out-of-cell time and recreation time and engage in social interactions and cell front interactions, depriving them of programs and conditions accessed by other inmates.

175. BSO knew about the violations described herein but failed to correct them, thereby exhibiting deliberate indifference to Montayvious' constitutional and statutory rights.

176. As a result of BSO's exclusion, discrimination, and denial of opportunities, Montayvious experienced pain and suffering and later death.

177. Accordingly, Defendant Tony is liable under the RA for violating Montayvious' constitutional and statutory rights.

178. Plaintiff prays that after due proceedings there be judgment rendered herein in Plaintiff's favor and against Defendant Tony as follows:

   a. Compensatory damages pursuant to 29 U.S.C. § 794;

   b. Equitable relief that BSO and Wellpath be required to adopt policies to prevent further incidents such as those complained of herein;

   c. Reasonable attorneys' fees, as provided in 29 U.S.C. § 794, and all costs of these proceedings; and

   d. All other relief as appears just and proper to this Honorable Court.

**COUNT 9**

**Wrongful Death – Fla. Stat. §§ 768.16-.26 and 768.28 (Defendants Gregory Tony, Sandra Mitchell, A Hernandez, Wellpath LLC, and Wellpath Management Inc. and John Does #1-3)**

179.     Plaintiff repeats and realleges every allegation of the Complaint,

180.     On July 19, 2022, Montayvious was incarcerated in Broward County Main Jail and in the custody of BSO, the head of which is Sheriff Gregory Tony.

181.     Defendants Sandra Mitchell, A. Hernandez, and John Does #1-3 were working under the supervision of Sheriff Gregory Tony.

182.     Defendants Sandra Mitchell, A. Hernandez, and John Does #1-3 were acting within the scope of their employment at BSO at all times from July 19, 2022, to Montayvious' death on July 21, 2022.

183.     Defendant Sandra Mitchell owed Montayvious a special duty of care when she did a Pre-Segregation Health Evaluation.

184.     Defendant A. Hernandez owed Montavious a special duty of care when he attempted to administer an intake screening.

185.     Defendant John Does #1 owed Montayvious a special duty of care when he conducted an evaluation on Montayvious following the altercation, and Defendant John Does #2-3 owed Montayvious a special duty of care when they made rounds to check on Montayvious.

186.     Defendant Gregory Tony owed Montayvious a duty of care from the moment he entered BSO's custody on July 19, 2022.

187.     Defendants Wellpath LLC and Wellpath Management Inc. owed Montayvious a special duty of care as Montayvious was under their care when he was incarcerated at Broward County Main Jail.

188. Defendant Tony, Wellpath LLC and Wellpath Management Inc, Sandra Mitchell, A. Hernandez, and John Does #1-3 owed Montayvious a special duty of care when he was placed in a solitary or segregation unit as a mentally ill person.

189. Defendants failed to discharge their duty to Montayvious in at least the following ways:

   a. By failing to properly treat Montayvious;

   b. By failing to properly supervise Montayvious;

   c. By failing to conduct proper evaluations of Montayvious and thereafter provide him with the required care as indicated by the evaluations; and

   d. By failing to address the recommendation of the Judge, which was to conduct a mental health screening.

190. As a direct and proximate cause of Defendants' negligence and failure to discharge their duties, Montayvious died by taking his own life.

191. Plaintiff prays that after due proceedings there be judgment rendered herein in Plaintiff's favor and against Defendants Gregory Tony, Sandra Mitchell, A Hernandez, and John Does #1-3 as follows:

   a. Compensatory and punitive damages pursuant to Fla. Stat. §§ 768.16-.26 and 768.28 and any other applicable statute;

   b. Reasonable attorneys' fees, as provided in Fla. Stat. §§ 768.16-.26 and 768.28, and all costs of these proceedings; and

   c. All other relief as appears just and proper to this Honorable Court.

### COUNT 10
**Intentional Infliction of Emotional Distress – Fla. Statutes**
**(Defendants Gregory Tony and Erick Zamora)**

192. Plaintiff repeats and realleges every allegation of the Complaint.

193. At all times relevant to this complaint, Defendant Tony, as Sheriff of Broward County, was responsible for supervising all employees of the Broward Sheriff's Office.

194. On August 2, 2022, Deputy Sheriff Erick Zamora and other members of the Broward Sheriff's Office arrived at the home of Rena Young. They were acting on behalf of their respective employers, pursuant to the customs, practices, policies, and/or procedures of their respective employers.

195. By the time they came to Rena Young's home to arrest Montayvious for violating his pre-trial release, Montayvious had been dead for nearly two weeks.

196. His pre-trial release had already been revoked by Judge Phoebe Francois.

197. Rena Young arrived home to find deputy sheriffs inside her home looking for her son, Montayvious.

198. Rena Young repeatedly informed Deputy Sheriff Erick Zamora and the other deputy sheriffs on scene that her son had died the month prior in the Broward County Jail.

199. Deputy Sheriff Erick Zamora and the other deputy sheriffs on scene ignored Rena Young and tore part her house looking for Montayvious and contraband.

200. The Defendants deliberately or recklessly inflicted mental suffering on Rena Young.

201. The Defendants' conduct was outrageous.

202. The Defendants' conduct caused Rena Young severe emotional distress.

203. Plaintiff prays that after due proceedings there be judgment rendered herein in Plaintiff's favor and against the Defendants as follows:

a. Compensatory and punitive damages pursuant to applicable Florida Statutes

b. Reasonable attorneys' fees, as provided in applicable Florida Statutes and all costs of these proceedings; and

c. All other relief as appears just and proper to this Honorable Court.

**COUNT 11**
**Negligent Infliction of Emotional Distress – Fla. Statutes**
**(Defendants Gregory Tony and Erick Zamora)**

204. Plaintiff repeats and realleges every allegation of the Complaint.

205. At all times relevant to this complaint, Defendant Tony, as Sheriff of Broward County, was responsible for supervising all employees of the Broward Sheriff's Office.

206. On August 2, 2022, Deputy Sheriff Erick Zamora and other members of the Broward Sheriff's Office arrived at the home of Rena Young. They were acting on behalf of their respective employers, pursuant to the customs, practices, policies, and/or procedures of their respective employers.

207. Rena Young suffered mental and physical injuries as a result of her son's death.

208. By the time they came to Rena Young's home to arrest Montayvious for violating his pre-trial release, Montayvious had been dead for nearly two weeks.

209. His pre-trial release had already been revoked by Judge Phoebe Francois.

210. Rena Young arrived home to find deputy sheriffs inside her home looking for her son, Montayvious.

211. Rena Young repeatedly informed Deputy Sheriff Erick Zamora and the other deputy sheriffs on scene that her son had died the month prior in the Broward County Jail.

212. Deputy Sheriff Erick Zamora and the other deputy sheriffs on scene ignored Rena Young and tore part her house looking for Montayvious and contraband.

213. The Defendants negligently inflicted mental suffering on Rena Young.

214. The Defendants' conduct caused Rena Young severe emotional distress.

215. Plaintiff prays that after due proceedings there be judgment rendered herein in Plaintiff's favor and against the Defendants as follows:

   a. Compensatory and punitive damages pursuant to applicable Florida Statutes

   b. Reasonable attorneys' fees, as provided in applicable Florida Statutes and all costs of these proceedings; and

   c. All other relief as appears just and proper to this Honorable Court.

## COUNT 12
### 42 U.S.C. § 1983 – FOURTH AMENDMENT – Unlawful Search and Seizure
### (Defendants Gregory Tony and Erick Zamora)

216. Plaintiff repeats and realleges every allegation of the Complaint.

217. At all times relevant to this complaint, Defendant Tony, as Sheriff of Broward County, was responsible for supervising all employees of the Broward Sheriff's Office.

218. On August 2, 2022, Deputy Sheriff Erick Zamora and other members of the Broward Sheriff's Office arrived at the home of Rena Young. They were acting on behalf of their respective employers, pursuant to the customs, practices, policies, and/or procedures of their respective employers.

219. By the time they came to Rena Young's home to arrest Montayvious for violating his pre-trial release, Montayvious had been dead for nearly two weeks.

220. His pre-trial release had already been revoked by Judge Phoebe Francois.

221. Rena Young arrived home to find deputy sheriffs inside her home looking for her son, Montayvious. Rena Young did not consent to the search of her home.

222. Rena Young repeatedly informed Deputy Sheriff Erick Zamora and the other deputy sheriffs on scene that her son had died the month prior in the Broward County Jail.

223. Deputy Sheriff Erick Zamora and the other deputy sheriffs on scene ignored Rena Young and tore part her house looking for Montayvious and contraband.

224. The Fourth Amendment protects citizens from unreasonable searches and seizures.

225. Accordingly, Defendant Tony and Zamora are liable under the Fourteenth Amendment for the individual defendants' deliberate indifference to Rena Young's constitutional rights.

226. Plaintiff prays that after due proceedings there be judgment rendered herein in Plaintiff's favor and against Defendants Tony and Zamora as follows:

a. Compensatory damages;

b. Equitable relief that BSO be required to adopt policies to prevent further incidents such as those complained of herein;

c. Reasonable attorneys' fees, as provided in 42 U.S.C. § 1988, and all costs of these proceedings; and

d. All other relief as appears just and proper to this Honorable Court.

**DEMAND FOR JURY TRIAL**

Pursuant to the Federal Rules of Civil Procedure, Plaintiffs hereby demand a jury trial on all issues triable by a jury.

Dated: October 22, 2024

Respectfully submitted,

By: __/s/Fairuze Sofia_____

Fairuze Sofia, Esq.
Florida Bar #0057354
Counsel for Plaintiffs
**THE SOFIA LAW FIRM**
3313 W Commercial Blvd #190
Fort Lauderdale, FL 33309
Telephone: (954) 765-6591
Facsimile: (954) 284-5644
fairuze@fairuzesofia.com